**THOMAS M. COOLEY LAW SCHOOL, a Michigan non-profit corporation, Plaintiff,**

v.

**The AMERICAN BAR ASSOCIATION, an Illinois non-profit corporation, John Sebert, individually and in his official capacity, Defendants.**

No. 1:04CV221.

United States District Court,
W.D. Michigan,
Southern Division.

June 9, 2005.

Michael W. Hartmann, Miller Canfield Paddock & Stone PLC, Detroit, MI.

Anne E. Rea, David T. Pritikin, Kathleen L. Roach, Sidley Austin Brown & Wood LLP, Chicago, IL.

Daniel R Gravelyn, Sarah M. Riley, William K. Holmes, Warner Norcross & Judd LLP, Grand Rapids, MI.

## OPINION OF THE COURT

MCKEAGUE, District Judge.

This action challenges certain adverse actions taken by the American Bar Association, frustrating efforts by Thomas M. Cooley Law School to begin operation of two satellite campuses. The first amended complaint sets forth six claims under federal and state law. Now before the Court are defendants' motions to dismiss and for summary judgment, as well as plaintiff's cross-motion for partial summary judgment. The Court has received and carefully considered voluminous briefing and exhibits from the parties and heard oral arguments of counsel. For the reasons that follow, defendants' motions will be granted and plaintiff's motion will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The material facts are largely undisputed. Plaintiff Thomas M. Cooley Law School ("Cooley") has its main campus and principal place of business in Lansing, Michigan. It has been accredited by the

American Bar Association ("ABA") since 1975.

In September 2002, Cooley began offering first semester classes in Rochester, Michigan, approximately 70 miles east of Lansing, at Oakland University. Under then existing ABA Standards and Rules of Procedure for Approval of Law Schools, Cooley was permitted to offer up to 20% of its educational programs at an additional location without obtaining prior approval or "acquiescence" from the ABA. Beginning with the second semester, in January 2003, Cooley intended to expand the program at Oakland beyond the 20% limit, representing a proposed "major change in organizational structure" that required prior acquiescence by the ABA.

Accordingly, Cooley applied for prior acquiescence for a two-year satellite program, couching its application in terms of proposed amended Standards and Rules that were expected to be adopted by the ABA before Cooley's application was acted on. Unfortunately, the proposed amended Standards and Rules had not been adopted by November 2002, when the Accreditation Committee ("Committee") addressed Cooley's application. Contrary to what Cooley had been led to believe, the Committee evaluated the application under the existing Standards and Rules, found the application wanting, and recommended denial.

As the Committee's recommendation went before the Council of the Section of Legal Education and Admissions to the Bar ("Council"), Cooley was allowed to supplement the record. Rather than acting on the Committee's recommendation, however, the Council, in December 2002, remanded the matter to the Committee for further consideration of the additional information submitted by Cooley, as well as consideration of an alternative request by Cooley for prior acquiescence in a one-year satellite program. Because the Accreditation Committee would not meet again to consider the matter on remand until January 24, 2003, Cooley was forced to abandon its plan to offer second semester classes at Oakland University in January 2003.

On remand, the Committee again applied the more demanding existing Standards, not the proposed amended Standards, and, in a February 3, 2003 action letter, again recommended denial of the application. The Committee determined that Cooley had failed to demonstrate that addition of the Oakland satellite campus would not interfere with its ongoing efforts to comply with the Standard 501 requirement that it "not admit applicants who do not appear capable of satisfactorily completing its educational program and being admitted to the bar." The Committee was also unpersuaded that student services, library resources, full-time faculty, co-curricular and extracurricular activities and facilities at the Oakland campus would be adequate to meet requirements of the existing Standards. Over Cooley's objections, presented on February 8, 2003, the Council approved the Committee's recommendation and denied Cooley's application by action letter dated February 11, 2003.

Contemporaneous with the Council's decision, Cooley gave the ABA written notice of its intention to proceed with operation of satellite campuses both at Oakland, immediately, and in Grand Rapids (approximately 65 miles west of Lansing) in association with Western Michigan University, beginning in May 2003. This course of action was based on Cooley's new determination that Rule 19(d) did not actually require acquiescence *before* implementation of a satellite program.

Consultant John A. Sebert responded on behalf of the ABA by two letters dated February 19, 2003. Mr. Sebert advised Cooley that its construction of Rule 19(d) was erroneous and that continued operation of the satellite campuses without prior

acquiescence could subject Cooley to sanctions. Sebert also advised that the proposed amended Standards and Rules had been approved by the ABA House of Delegates, making them effective as of February 11, 2003. These letters were followed by the March 24, 2003 letter of E. Thomas Sullivan, Council Chairperson. He acknowledged that official interpretation of Rule 19(d) was a matter ultimately committed to the Council, on which he expressly declined comment. Yet, he pointed out that any such interpretation would necessarily be made in the context of Standard 105, which clearly requires a law school to obtain acquiescence *prior* to making a major change in its program. Otherwise, Cooley's request for an authoritative interpretation of Rule 19(d) was ignored.

Undeterred by these communications, Cooley went forward with its plans. By letter dated June 3, 2003, Cooley was advised of the Council's refusal to consider granting "provisional approval" of its applications for acquiescence. Following ABA site visits at both proposed satellite campuses in July 2003, Consultant Sebert advised Cooley by letter dated August 9, 2003, that Cooley appeared not to be operating in compliance with the Standards and that the matter would be referred to the Accreditation Committee. Specifically, Sebert observed that Cooley appeared to be offering more than 15 credits of instruction at both proposed satellite campuses without prior acquiescence, contrary to Standard 105. Consistent with Sebert's notice, the Committee, in turn, determined that Cooley appeared to be in non-compliance with the Standards and Rules. By letter dated October 9, 2003, Cooley was requested to explain its actions in writing and was invited to appear before the Committee to speak to these issues on November 7, 2003.

Following this meeting, the Committee, on November 19, 2003, recommended denial of Cooley's satellite applications because Cooley had been operating the satellite campuses without prior acquiescence. The recommendation included no reference to the substantive requirements for satellite campuses. The Committee expressly noted that Cooley had previously been censured by the ABA in 1997 for offering a program constituting a "major change" (weekend law program) without obtaining prior acquiescence. Thomas M. Cooley Law School President and Dean Don LeDuc was requested to appear before the Committee on January 23, 2004 "to show cause why the School should not be required to take appropriate remedial action, placed on probation, or removed from the list of law schools approved by the American Bar Association." The Council approved the Committee's recommendation at its meeting on December 5, 2003.

Cooley thereafter sought and obtained a continuance of the "show cause" proceeding before the Committee from January 23 to April 23, 2004. It was made clear by the ABA, however, that no further action would be taken on Cooley's applications for acquiescence unless Cooley discontinued operation of the satellite campuses until the ABA granted acquiescence.

Cooley filed its complaint in this action on March 30, 2004. Cooley sought a preliminary injunction to enjoin the ABA from imposing sanctions and require the ABA to proceed with consideration of the merits of its applications. A hearing on the motion for preliminary injunction was conducted on April 16, 2004 and culminated in a Stipulation and Agreed Order, entered on May 10, 2004. The agreement provided that Cooley would refrain from offering more than 15 credit hours of instruction at either satellite campus until the ABA granted acquiescence. In return, the ABA

agreed to defer consideration of sanctions until the Committee's next meeting, June 25, 2004. The ABA also agreed that the Committee would then consider and make a recommendation on the merits of Cooley's applications for acquiescence; and that the Council would consider, on the merits, the Committee's recommendations on the applications at its meeting on August 5, 2004. In the meantime, on agreement of the parties, proceedings in this action were stayed.

After the June 25, 2004 proceeding, the Committee issued an action letter dated July 7, 2004, recommending that sanctions be imposed on Cooley for its substantial and persistent non-compliance with Standard 105 by operating both satellite campuses without prior acquiescence. The Committee recommended that Cooley be publicly censured and rendered ineligible to operate any satellite or branch campus prior to September 2005.

On July 14, 2004, the Committee issued two additional action letters, recommending denial of both of Cooley's applications for acquiescence. Both recommendations were based on concern caused by Cooley graduates' subpar and declining bar examination passage results. The Committee determined that such results raised "serious doubt that the Law School maintains an educational program that prepares its graduates for admission to the bar and to participate effectively and responsibly in the legal profession, as required by Standard 301(a) and Interpretation 301–1." The Committee thus concluded that Cooley had not met its burden of establishing that operation of either satellite campus "will not detract from the Law School's ability to maintain a sound educational program and that the Law School will be operated in compliance with the Standards."

The Committee's recommendations were taken up by the Council at its August 5 meeting. Action letters issued on August 17. First, the Council approved the Committee's recommendation to impose sanctions on Cooley, but extended the period of Cooley's ineligibility to operate satellite campuses until July 31, 2006. Second, regarding the applications for acquiescence, the Council declined to act. The Council echoed the Committee's concern about bar passage results and about the possibility that the proposed satellite programs would detract from Cooley's ability to maintain a good educational program. Yet, the Council refrained from acting on the applications because the information then available was insufficient to assess the merits of the satellite programs, facilities and faculty when they would next be eligible to operate, after July 31, 2006.

In view of the ABA's actions, Cooley moved to lift the stay and re-open proceedings in this Court. Cooley filed a first amended complaint containing six claims. Count I is a claim for violation of common law due process. Cooley alleges that the ABA's decisions to impose sanctions and withhold acquiescence are arbitrary and capricious, an abuse of discretion and not supported by substantial evidence. In Count II, Cooley asserts a claim for breach of contract, alleging that the ABA has failed to perform as promised in the Stipulation and Agreed Order. Count III is a claim under the Higher Education Act ("HEA"), 20 U.S.C. § 1099b. Cooley alleges the ABA, in making its accreditation decisions, failed to comply with HEA-mandated standards and procedures. Count IV is a second breach of contract claim. By accepting an $8000 application fee in connection with each satellite application, the ABA is said to have contractually bound itself to process the applications based on its own Rules of Procedure for Approval of Law Schools. By refusing to process the applications in accordance with these Rules, the ABA is said to have breached its contractual obligations. In Count V, Cooley alleges the ABA and its

Consultant John Sebert made negligent misrepresentations in connection with the application process, upon which Cooley relied to its detriment. Count VI is a claim for equitable estoppel. Cooley alleges that during the application process, it invested some $5.5 million in reliance upon various actions, representations and failures to act by the ABA, and the ABA is now estopped to deny acquiescence.

## II. DEFENDANTS' MOTION TO DISMISS

The ABA's motion to dismiss challenges the facial validity of all of Cooley's claims except count I. The motion attacks the legal sufficiency of the complaint's allegations. Pursuant to Fed.R.Civ.P. 12(b)(6), dismissal is appropriate where the complaint fails to state a claim upon which relief can be granted. The Court must accept all well-pleaded factual allegations as true and may dismiss a claim only if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle it to relief under some viable legal theory. *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 563 (6th Cir. 2003); *Lillard v. Shelby County Bd. of Education,* 76 F.3d 716, 726 (6th Cir.1996).

### A. Count II Breach of Contract Claim

When Cooley commenced this action, it moved for a preliminary injunction. The motion was denied as withdrawn when the parties reached agreement regarding ongoing proceedings before the Committee and the Council. The parties' agreement was incorporated into an order of the Court, the "Stipulation and Agreed Order." The obligations assumed by the parties and then embodied in a court order ceased to be mere matters of private contract, but became matters of judicial mandate. The ABA rightly argues that the count II breach of contract claim is a misnomer and fails to state a valid claim.

Cooley, in turn, acknowledges that the relief sought in count II is most appropriately pursued through a motion to enforce the Stipulation and Agreed Order. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (recognizing court's inherent authority to compel obedience to its lawful orders); *Re/Max Int'l, Inc. v. Realty One, Inc.,* 271 F.3d 633, 641–42 (6th Cir.2001)(recognizing court's ancillary jurisdiction to enforce settlement agreement incorporated into court order). In fact, Cooley has, in the meantime, filed such a motion.

It follows that Cooley's count II claim for breach of contract is, at best, redundant of its motion to compel enforcement of the settlement agreement. It will therefore be dismissed without prejudice. The motion to enforce the settlement agreement is addressed below.

### B. Count III HEA Claim

The Higher Education Act and implementing regulations promulgated by the Department of Education establish a regulatory scheme governing the relationship between accrediting agencies and institutions of higher learning who seek or obtain accreditation. Accreditation is significant because, among other things, it confers eligibility for federal student loan monies. In the HEA, Congress has specifically provided:

> Notwithstanding any other provisions of law, any civil action brought by an institution of higher education seeking accreditation from or accredited by an accrediting agency or association recognized by the Secretary [of Education].... and involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court.

20 U.S.C. § 1099b(f). Cooley has invoked this exclusive federal jurisdiction in count

III, alleging that the ABA violated requirements established under the HEA. Specifically, the ABA is alleged to have failed to apply procedures that comply with due process, failed to provide adequate specification of accreditation process requirements and deficiencies, and failed to ensure consistency in its decision making.

The ABA moves to dismiss the claim contending there is no private right of action under the HEA.[1] The ABA insists that § 1099b(f) is simply a jurisdictional grant and that the HEA does not create a private right of action, expressly or impliedly, against anyone other than the Secretary of Education. Indeed, this is the consistent teaching of the case law. The Eleventh Circuit recently noted "that nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions." *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1221 (11th Cir.2002) (collecting cases). *See also Slovinec v. DePaul University*, 332 F.3d 1068, 1069 (7th Cir.2003) (holding that HEA regulatory scheme is enforceable by and against the Secretary of Education, but does not authorize litigation by private plaintiff against anyone else).

The only arguably contrary authorities do not go far enough to support Cooley's claim. In *Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools and Colleges*, 44 F.3d 447, 449 (7th Cir.1994), the Seventh Circuit recognized that Congress, in the HEA, did not specify a source of law for an accreditation-related cause of action.

The court concluded, however, that the § 1099b(f) grant of exclusive federal jurisdiction necessarily implies the application of federal law. *Id.* The judicial review provisions of the federal Administrative Procedures Act, 5 U.S.C. § 706, were deemed—as a function of federal common law, rather than state law—to "supply the right perspective for review of accrediting agencies' decisions." *Id.* at 450. Hence, the Seventh Circuit went on to determine whether the accreditation decision before it was "'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law' or reached 'without observance of procedure required by law,' 5 U.S.C. § 706(2)(A),(D)." *Id.* at 449. The court stopped short of recognizing a private right of action for direct enforcement of HEA requirements.

In *Massachusetts School of Law at Andover v. American Bar Ass'n*, 142 F.3d 26, 33 (1st Cir.1998), the First Circuit held that § 1099b(f) is constitutional and effective to confer federal jurisdiction. Yet, the complaint before the court, removed to federal court on the strength of § 1099b(f), did not include a claim for violation of the HEA itself, and the court did not reach the question whether the HEA creates a private right of action.

Finally, Cooley relies on *Western State University of Southern California v. American Bar Ass'n*, 301 F.Supp.2d 1129, 1134–35 (C.D.Cal.2004), where the court mused that unless a private right of action were deemed to be impliedly created by the HEA, § 1099b(f) "might be superfluous." Yet, the *Western State* court expressly declined to decide whether the plaintiff could proceed directly under the HEA. *Id.*

---

1. Following the hearing in this matter and following the filing of supplemental briefs, as directed by the Court, pertaining to the HEA claim, Cooley filed a motion for leave to file an additional supplemental brief, with proposed brief. The ABA has opposed the motion. The Court has considered the proposed supplemental brief, but finds it to be unhelpful to resolution of the ABA's motion to dismiss the HEA claim.

■ In sum, there is no case law support for the proposition that the HEA expressly or impliedly creates a private right of action in favor of an institution of higher education against an accrediting agency. Rather than engage in speculation as to what Congress might have intended in § 1099b(f), the Court will follow the clear weight of authority, holding that Cooley cannot enforce HEA standards by asserting a claim under the HEA directly against the ABA. The ABA's motion to dismiss count III of Cooley's first amended complaint for failure to state a valid claim will therefore be granted.[2]

## C. Counts IV, V, VI—State Law Claims

Counts IV, V and VI set forth state law claims for breach of contract, negligent misrepresentation and equitable estoppel. The ABA contends these claims, too, must be dismissed, because Cooley's common law due process claim represents its exclusive remedy.

In *Foundation for Interior Design Education Research v. Savannah College of Art & Design*, 244 F.3d 521, 528–29 (6th Cir.2001), the Sixth Circuit affirmed the district court's ruling that a state law challenge to an accreditation decision implicates deferential judicial review. That is, the court held that the common law standard of review for school accreditation decisions applied, whereby an accreditation decision must be upheld unless shown to be arbitrary and capricious or marked by a denial of due process. *Id.*

In *Foundation*, the appropriateness of this common law standard was derived from Michigan law. The Sixth Circuit observed, however, that this limited deferential review was consistent with the approach taken in numerous other jurisdictions, including challenges to decisions by accrediting agencies approved by the Secretary of Education brought in federal court pursuant to the jurisdictional provision of the HEA, 20 U.S.C. § 1099b(f). The *Foundation* court noted with approval the ruling of the Seventh Circuit in *Chicago School*, 44 F.3d at 449–50, where an accrediting agency's decision challenged under § 1099b(f) was held to be governed by judicial review principles of federal administrative law. In both *Chicago School* and *Foundation*, these judicial review principles were deemed to provide a standard of review substantially similar to the standard that has evolved in the common law, *i.e.*, requiring assessment whether the decision was arbitrary, capricious, an abuse of discretion or reached without observance of procedure required by law. *Foundation*, 244 F.3d at 528; *Chicago School*, 44 F.3d at 449–50. Further, in both decisions, such deferential review was deemed to supplant or preempt other theories of relief, requiring their dismissal.

■ The Court finds the reasoning of these decisions to be persuasive, if not controlling. The state law claims asserted in counts IV, V and VI are in effect "repackagings" of theories properly addressed under the auspices of Cooley's count I common law due process claim. Cooley's arguments that the ABA's actions were marked by misrepresentations and breaches of contractual obligations are subsumed in, and properly addressed in connection with, the claim that the ABA's decisions are arbitrary and capricious or otherwise not in accord with procedural requirements. Accordingly, counts IV, V and VI will also be dismissed.

---

**2.** Dismissal of the HEA claim appears to be of little substantive significance. The HEA violations alleged in count III appear to be substantially redundant of the common law due process violations asserted in count I, a claim whose facial validity the ABA has not even challenged.

## III. CROSS–MOTIONS FOR SUMMARY JUDGMENT

In count I, Cooley challenges both the ABA's decision to impose sanctions and its decisions to withhold acquiescence as violative of its common law due process rights. Specifically, Cooley alleges the ABA's decisions must be vacated because they are not supported by substantial evidence, are arbitrary and capricious, represent an abuse of discretion, and were reached without observance of required procedure. Both Cooley and the ABA recognize that this common law due process claim implicates scrutiny analogous to judicial review of an administrative agency's decision. *See Foundation,* 244 F.3d at 528–29; *Chicago School,* 44 F.3d at 449–50. The ABA is not, of course, a federal or state administrative agency. However, its Council of the Section of Legal Education and Admissions to the Bar is recognized by the Secretary of Education as an "accrediting agency" under 20 U.S.C. § 1099b. As such, the Council's accreditation-related decisions are properly challenged in federal court, 20 U.S.C. § 1099b(f), and are properly scrutinized under the standards provided by the federal common law or, in other words, the judicial review provisions of the Administrative Procedures Act, 5

U.S.C. § 706. *See Chicago School,* 44 F.3d at 449–50; *Foundation,* 244 F.3d at 528.

■ This Court's review of the ABA's decisions is deferential. *Chicago School,* 44 F.3d at 450. A decision will be upheld unless it is shown to be arbitrary and capricious, unsupported by substantial evidence, an abuse of discretion, contrary to law or not in accordance with required procedures. *Id.* at 449–50; 5 U.S.C. § 706. The Court's review of the ABA's decisions is limited to the existing record, the contents of which are not materially disputed. It is based on this undisputed record that each party claims entitlement to judgment as a matter of law.

### A. Count I—Review of Sanction Decision

#### 1. *Not in Accordance with Required Procedure*

First, Cooley contends the ABA's decision to impose sanctions should be vacated because it is contrary to its own rules and therefore not in accordance with required procedure. Cooley's argument is based on what is said to be the plain and unambiguous language of Rule 13 of the Rules for the Approval of Law Schools. Rule 13 defines the procedure and potential outcome of a hearing before the Committee on a show cause order.[3] Based on its

---

**3.** In relevant part, Rule 13 provides as follows:

Rule 13. Hearing on Show Cause Order.
 (a) The Consultant shall furnish to the Committee:

. . . . .

 (b) Representatives of the law school, including legal counsel, may appear at the hearing and submit information to demonstrate that the school is currently in compliance with all of the Standards or to present a reliable plan for bringing the school into compliance with all of the Standards within a reasonable time.
 (c) The Committee may invite the fact finder, if any, and the chairperson or other

member of the most recent site evaluation team to appear at the hearing. The law school shall reimburse the fact finder and site evaluation team member for reasonable and necessary expenses incurred in attending the hearing.
 (d) After the hearing, the Committee shall determine whether the law school is in compliance with the Standards and, if not, it shall direct the law school to take remedial action or shall impose sanctions, as appropriate.
 (1) Remedial action may be ordered pursuant to a reliable plan for bringing the school into compliance with all of the Standards.

rather strict reading of Rule 13, Cooley argues the Committee is authorized to impose a sanction only where the law school is found not to be *currently* (*i.e.*, at the time of the show cause hearing) in compliance with the applicable Standards.

It was by action letter of the Council dated December 17, 2003, that Cooley was first directed to show cause why it should not be subject to a remedial action requirement or sanction for operating the two satellite campuses without prior acquiescence, in violation of Standard 105. By the time the show cause hearing was conducted, on June 25, 2004, it is undisputed that Cooley had ceased offering more than 15 credit hours of instruction at either satellite campus. In other words, Cooley contends, at the time of the show cause hearing, it was currently in compliance with Standard 105. Cooley does not now contend that its unauthorized operation of the satellite campuses was in compliance with the Standards, but argues that its non-complying conduct had become immune from sanction because it ceased before the show cause hearing was conducted.

Cooley's argument is not groundless, but is based on an overly technical and unreasonable construction of Rule 13(d). Indeed, the history of Cooley's failed efforts to obtain acquiescence illustrates the senselessness of its proffered construction. Cooley's applications for prior acquiescence for both campuses were denied in February 2003. Immediately, in direct op-

position to the ABA's decisions and in blatant defiance of the ABA's authority, Cooley began operating first the Oakland campus and then the Grand Rapids campus as satellite programs. Notwithstanding repeated notice from the ABA that Cooley's actions could subject it to sanctions, Cooley continued to operate one or both satellite campuses without ABA acquiescence for some 14 months, until April 2004.

■ The proposition that Cooley can have immunized itself from sanctions for such persistent contemptuous conduct simply by ceasing the misconduct shortly before the show cause hearing flies in the face of both common sense and traditional notions of justice. Even if the literal language of Rule 13(d) supported such a construction, enforcement thereof would not be justified where it so plainly yielded absurd results at odds with the regulatory scheme established in the Rules taken as a whole. *See Riley v. Kurtz,* 361 F.3d 906, 913 (6th Cir.2004).

Granted, Cooley's construction of the language of Rule 13(d) is not entirely implausible. Viewed in the abstract, the language could be read as requiring a finding that the law school *is* not in compliance as a prerequisite to the imposition of a remedial action requirement or sanctions. After all, Rule 13(e) provides that if the law school *is* in compliance, the matter shall be concluded by "appropriate resolution." But what point in time does "is" refer to?

(2) If matters of noncompliance are substantial or have been persistent, then the Committee may recommend to the Council that the school be subjected to sanctions other than removal from the list of approved law schools regardless of whether the school has presented a reliable plan for bringing the school into compliance.

(3) If matters of noncompliance are substantial or have been persistent, and the school fails to present a reliable plan for

bringing the school into compliance with all of the Standards, the Committee may recommend to the Council that the school be removed from the list of approved schools.

(e) If the Committee determines that the law school is in compliance, it shall conclude the matter by adopting an appropriate resolution, a copy of which shall be transmitted to the president and the dean of the school by the Consultant.

Referring to Rule 13(b), Cooley notes that "is" is accompanied by "currently," implying that the date of the show cause hearing is the determinative point in time. Yet, the prefatory phrase of Rule 13(d) itself, "after the hearing," read literally, could just as plausibly support the conclusion that the date of the Committee's decision is the determinative point in time. From this, it is clear only that the language of Rule 13 is not intended to define the temporal component with any precision.

Moreover, as the ABA correctly argues, subparagraphs (2) and (3) of Rule 13(d) expressly authorize the Committee to recommend sanctions if matters of noncompliance "have been persistent." This language is unmistakably retrospective, authorizing sanctions, or punishment, for past misconduct, in contrast to, or in addition to, remedial action which operates prospectively. The ABA's semantic argument is at least as strong as Cooley's and its construction is manifestly superior in terms of the practical, real-world operation of the Rule.

Cooley insists that the primary thrust of the Rules is remedial, not punitive; that the ABA's regulatory purpose is to bring law schools into compliance with the Standards. Once compliance is achieved, Cooley argues, there is no role for remedial action or sanctions. Cooley's argument ignores the obvious. A sanction, or punishment, is not strictly backward-looking and retributive. It also serves a restorative or remedial purpose, imposing some restriction or obligation on the offending school in order to right or remit the wrong and restore order. Punishment also has an additional prospective purpose and effect: deterrence. Imposition of a sanction for past misconduct is naturally expected to induce future compliance by deterring future misconduct. The Court thus remains unpersuaded that the primarily remedial purposes of the Rules foreclose any role for sanctioning past misconduct.

The Court is obliged to defer to an agency's interpretation of its own rules unless plainly erroneous. *A.D. Transport Express, Inc. v. United States,* 290 F.3d 761, 766 (6th Cir.2002). That Cooley has made a plausible semantic argument does not render the ABA's interpretation unreasonable or inconsistent. *Id.* at 767. Rule 13(d) could have been more artfully drafted. Yet, reading it with an eye toward effectuating its "straightforward and common sense meaning," the Court is firmly convinced that the ABA's construction is reasonable and comports with the Rule's regulatory purposes. *See Riley,* 361 F.3d at 913; *Walker v. Bain,* 257 F.3d 660, 666–67 (6th Cir.2001). The ABA's imposition of sanctions for Cooley's past misconduct was not therefore, violative of governing procedures.

### 2. *Arbitrary and Capricious*

Second, Cooley challenges the sanction decision as arbitrary and capricious. In support of this argument, Cooley contends the sanction is disproportionate and was imposed without reference to fixed principles. In particular, Cooley complains of (1) the Council's failure to explain how its noncompliance with the Standards was assessed to be "substantial" or "persistent;" and (2) the Council's failure to explain its doubling of the Committee's recommended sanction, notwithstanding its adoption of the Committee's findings and conclusions. Cooley also contends the Council's failure to articulate its reasoning confounds meaningful judicial review.

This Court's review of an agency's sanction decision is extremely limited. *See Goldstein v. United States,* 9 F.3d 521, 523 (6th Cir.1993). Unless a sanction is found to be unwarranted in law or without justification in fact, it must be enforced.

*Id.* The severity of the sanction, being a matter peculiarly within the agency's expertise, is not open to review. *Id.See also Cobb v. Yeutter,* 889 F.2d 724, 730 (6th Cir.1989) (noting agency's broad authority to determine appropriate sanction and defining scope of review as limited to ensuring that chosen penalty is allowable judgment under law and facts).

■ Adopting the Committee's recommended findings and conclusions, the Council determined that Cooley had violated Standard 105 by operating, without prior acquiescence, a satellite campus at Oakland University in Rochester from February 2003 through April 2004, and a satellite campus at Western Michigan University in Grand Rapids from September 2003 through April 2004. That Cooley engaged in this unauthorized conduct is not disputed. Nor is it presently disputed that such conduct was violative of the Standards.[4] Moreover, Cooley deliberately embarked on this course of conduct immediately after acquiescence had been denied, and continued on this course for more than a year, despite repeated warnings. While the Council did not specifically explain *why* such conduct was deemed to represent substantial and persistent noncompliance, it hardly needed to. No other conclusion would have been reasonable. Because a rational connection between the facts found and choice made by the Council can reasonably be discerned, the decision must be upheld. *See Greenbaum v. U.S. E.P.A.,* 370 F.3d 527, 542 (6th Cir.2004).

The Council's failure to explain its departure from the Committee's recommended sanction, effectively doubling it, is understandably troubling to Cooley. Yet, finding that imposition of sanctions was authorized and warranted by application of the governing Rules and Standards, and was not without justification in fact, the Court has no alternative but to enforce the sanctions. Further, considering the nature and extent of Cooley's noncompliance, the sanctions imposed do not shock the conscience of the Court or otherwise appear to be unreasonably onerous in any respect. Moreover, inasmuch as the sanctions represent a matter of judgment within the peculiar competence of the Council, the appropriateness of their severity is exempt from judicial scrutiny.

Accordingly, the Court rejects Cooley's contention that the sanction decision is arbitrary and capricious.

### 3. *Abuse of Discretion/Denial of Procedural of Due Process*

Cooley contends the proceedings that yielded the sanction decision were marred by various denials of Cooley's procedural due process rights and abuse of the Council's or Committee's discretion. Specifically, the ABA is said to have abused its discretion by failing to acknowledge, as a mitigating circumstance, the extent to which its handling of the acquiescence applications contributed to the dispute. Also, the combination of prosecutorial and adjudicative functions in the same body is said to have resulted in inherent bias that warrants heightened scrutiny. Finally, Cooley complains of various evidentiary

---

4. Originally, in its communications with the ABA, Cooley purported to justify this conduct through reliance upon a novel and strained interpretation of Rule 19(d). While ABA representatives gave clear notice that Cooley's interpretation was erroneous, Cooley's request for an official interpretation of Rule 19(d) was not otherwise responded to. In its original complaint, Cooley cited the ABA's refusal to provide an official interpretation as an example of the ABA's arbitrary and capricious conduct and abuse of discretion. In its amended complaint, however, Cooley, tellingly, has all but abandoned any reliance on its contrived interpretation of Rule 19(d) as justification for its conduct.

rulings that the ABA either did or did not make.

■ Cooley continues to miss the forest for the trees. These complaints of technical procedural violations, even if not entirely groundless, do not even hint at the existence of prejudicial error, such as might justify relief. On judicial review, "a mistake that has no bearing on the ultimate decision or causes no prejudice shall not be the basis for reversing an agency's determination." *Coalition for Gov. Procurement v. Federal Prison Industries, Inc.,* 365 F.3d 435, 468 (6th Cir.2004) (quoting *Sierra Club v. Slater,* 120 F.3d 623, 637 (6th Cir.1997)). This rule requires Cooley to demonstrate that it was prejudiced by the asserted errors. *Id.*

■ In view of the undisputed evidence of Cooley's deliberate and prolonged violation of the governing Standards and disrespect of the ABA's authority, the conclusion that Cooley would be subject to sanctions was practically unavoidable. Cooley has failed to demonstrate that any of the asserted procedural violations, even if substantiated, had any impact on the decision making process. In other words, no prejudice is shown and Cooley's procedural objections are overruled.

The Court has thus duly considered Cooley's challenges to the ABA's sanction decision under the applicable deferential review standards and finds that the decision has not been shown to be arbitrary and capricious, an abuse of discretion, or otherwise reached without observance of required procedures. There is no genuine issue of material fact. To the extent Cooley's count I common law due process claim challenges the sanction decision, the ABA is entitled to judgment as a matter of law.

## B. Count I—Review of Decision to Defer Action on Applications

Cooley also challenges the Council's decision to defer action on its applications for acquiescence. The Council's decision is embodied in a two-page letter from Consultant Sebert to President LeDuc. The rationale for the decision is succinctly stated:

Following a full day of hearing and discussion, and after extensive consideration of the matter on the merits, the Council declined to act on the pending applications at this time in light of the following facts.

(1) In a separate action, the Council imposed sanctions on Cooley pursuant to Rule 14. One of the sanctions imposed is that Cooley is deemed ineligible to operate any satellite or branch campus prior to July 31, 2006.

(2) The information before the Council concerning the School's bar passage results raises serious concern as to whether Cooley has satisfied its burden under Rule 18(p) of demonstrating (1) that the changes will not detract from the law school's ability to maintain a sound educational program leading to the J.D. degree; and (2) that the law school will be operated in compliance with the Standards.

(3) Cooley is scheduled for its next sabbatical site evaluation in the fall of 2005, and it is anticipated that the site evaluation report will be before the Accreditation Committee in the spring of 2006.

(4) The present applications for acquiescence do not provide the Council with sufficient information upon which the Council can rely in making a decision that will not become applicable until 2006. Therefore, Cooley may file in the summer or fall of 2005 a new application for acquiescence in the establishment of

one or more satellite or branch campuses, to be operated after July 31, 2006. The sabbatical site evaluation report will then provide the Committee and the Council current information as to whether, at that time, Cooley is in full compliance with the Standards and Rules. The fact-finding reports prepared in connection with new applications for acquiescence, in combination with the sabbatical site evaluation report, will then provide the basis for determining whether, at that time, Cooley satisfies the criteria for acquiescence in the establishment of satellite or branch campuses that are set forth in the applicable Standards and Rules.

Council action letter, August 17, 2004. Cooley construes this letter as stating two reasons for the Council's declining to act on the applications for acquiescence: (1) the insufficiency of current (2004) information to enable evaluation of programs that Cooley would not be eligible to operate, due to the sanctions, until after July 31, 2006; and (2) "serious concern," stemming from evidence of subpar and declining bar exam pass rates, about Cooley's ability to maintain a sound educational program. Cooley challenges both reasons on various grounds.

As a threshold matter, the Court finds Cooley's characterization of the Council's decision flawed. The Council clearly did not *deny* the applications, on the merits or otherwise. The Committee had recommended denial of both applications because Cooley had not met its burden of demonstrating that the satellite programs would not detract from its ability to maintain a sound educational program. However, the Council did not adopt these recommendations. Rather, it declined to act "at this time," or deferred action on the merits, until more complete and up-to-date information could be evaluated in connection with Cooley's anticipated applications for satellite operations in the Fall of 2006.

Thus, although the Council expressly alluded to its serious concern about bar passage results, such concern hardly represented reason to *defer* action. It could arguably have represented reason to *deny* acquiescence, as the Committee concluded, but the Council did not adopt this approach. Instead, it was the sanctions just imposed by the Council that clearly represented the premise for deferral of action. The ¶ 2 reference to the Council's serious concern about bar passage results, consistent with the Committee's conclusion, reflected the Council's consideration of the merits and represented a cautionary instruction to Cooley—*i.e.*, that it should be prepared to address this concern when it renewed its applications. Accordingly, the Court confines its review of the Council's decision to its actual, determinative rationale, the insufficiency of current (2004) information as predictor of future (2006) compliance with the applicable Standards and Rules. Cooley challenges this rationale on two grounds, contending it constitutes an abuse of discretion and represents a violation of the parties' Stipulation and Agreed Order.

### 1. *Abuse of Discretion.*

Cooley contends the ABA had a duty to act on the applications and its refusal to do so constitutes an abuse of discretion. The ABA maintains the applications could not be considered in a vacuum, but only in conjunction with the sanctions imposed, which had a significant impact on evaluation of the applications. The ABA insists it had no duty, in this context, to issue advisory opinions. The Court has explained why the sanction decision must be upheld. The legitimacy of the sanctions having thus been established, the present question is reduced to whether, in light of the consequences of the sanctions, the Council abused its discretion by deferring action on the applications.

An abuse of discretion may be found to exist when the reviewing court is firmly convinced that a mistake has been made. *United States v. Kingsley*, 241 F.3d 828, 835 n. 12 (6th Cir.2001). On review of an agency decision, an abuse of discretion will be found if no evidence supports the decision, or if the agency misapplied the law. *National Engineering & Contracting Co. v. O.S.H.A.*, 928 F.2d 762, 768 (6th Cir.1991). In making this determination, the reviewing court considers whether the agency's decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination. *Hazime v. I.N.S.*, 17 F.3d 136, 140 (6th Cir.1994).

Here, the Council's decision to defer action until the Spring of 2006, when it would have the benefit of Cooley's next Fall 2005 sabbatical site evaluation report, is adequately explained and makes eminent sense. Then, in closer proximity to the Fall of 2006, when Cooley would next be eligible to operate the satellite campuses, the Council would be able to assess then-current information about the adequacy of the administration, faculty, educational programs, facilities and student services at each location. Had it not deferred action, the Council would have been forced to either grant or deny acquiescence in satellite programs that would not become operational for two years, based on the assumption that all relevant existing facts would remain static in the meantime. The Court finds no abuse of discretion in the Council's preference for acting on fresh rather than stale evidence, on actual rather than presumed facts.

Cooley objects, contending the ABA could have and should have evaluated the merits of the existing applications and at least provided Cooley with notice of any identified deficiencies. On this point, the Court does not disagree with Cooley. While the Council and the Committee have given notice of their concern about bar exam pass rates, their findings and conclusions offer little guidance as to whether the applications meet other required criteria. A more comprehensive and explicit evaluation of the merits appears to have been within the ABA's power and would have proved helpful to Cooley. However, under the governing standards, the Court cannot hold that the ABA's failure to provide such a comprehensive and explicit evaluation is irrational, arbitrary and capricious, or an abuse of discretion. Instead, the ABA's deferral of action on the applications appears to have been well within its discretion, especially considering the tortured history of the applications and the sanctions newly imposed.

### 2. *Violation of Settlement Agreement*

Cooley also contends the ABA's refusal to act on the applications is in direct violation of the terms of the parties' settlement agreement that led to withdrawal of Cooley's motion for preliminary injunction in April 2004.[5] With reference to the transcript of the April 16, 2004 hearing, where the agreement was first reached, Cooley insists it was understood and agreed between the parties and the Court that the ABA had promised to address the merits of the applications in conjunction with determining whether sanctions would be imposed. Cooley asks the Court to enforce the settlement agreement and order the ABA to make a decision on the merits of the applications and, in particular, to advise Cooley whether the programs meet

---

5. This argument is asserted in Cooley's motion to compel enforcement of settlement agreement, filed in lieu of the breach of contract claim originally asserted in count II of its first amended complaint.

the requirements of Interpretations 105–3 and 105–4.

In response, the ABA points out that the parties' oral settlement agreement was, by stipulation, memorialized in an agreed order that specifically detailed the parties' obligations. Pursuant to the Stipulation and Agreed Order, the Council expressly agreed "to *consider and act* on the Accreditation Committee's recommendations on the imposition of sanctions;" and agreed "to *consider* on the merits the Accreditation Committee's recommendations on Cooley Law School's applications for acquiescence." Agreed Order, May 10, 2004, ¶¶ 6, 7 (emphasis added). The ABA maintains that it complied with the terms of the Agreed Order in all respects. That is, while the Council, as promised, considered *and* acted on the sanctions recommendation, it exercised its prerogative to consider without acting on the merits of the acquiescence recommendations.

Cooley insists that the Agreed Order must be read in light of the hearing transcript. The transcript is said to demonstrate that the Council's obligation to consider the Committee's acquiescence recommendations "on the merits," included a duty to determine whether Cooley's applications satisfied the substantive requirements of the governing Standards.

The settlement agreement placed on the record in general terms on April 16, 2004, led to Cooley's withdrawal of its motion for preliminary injunction, the only matter then before the Court. While the parties had genuinely reached an agreement in principle that warranted a temporary stay of federal court proceedings, it was than abundantly clear from the Court's exchange with counsel, that numerous ramifications were implicated by the agreement and that details remained to be worked out. Finalizing these details required approximately three weeks, culminating in the carefully worded Stipulation and Agreed Order, which both sides presented to the Court as the memorialization of their agreement. The Agreed Order is replete with references to the transcript of the April 16 hearing. Yet, obviously, the parties were not content to let the transcript speak for itself. They chose to embody their agreement in the Agreed Order, to clarify, organize and complete the mutual obligations that would bind them and be subject to enforcement by the Court.

 Cooley rightly argues that the Court has the power to enforce an oral settlement agreement even though it has not been reduced to writing. *Re/Max Int'l, Inc.*, 271 F.3d at 646. Yet, once the agreement was reduced to writing in the Agreed Order, the memorialization of the parties' agreement superseded prior oral negotiations or understandings. *See Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 455 (6th Cir.2005). Absent fraud or mistake or some other invalidating cause, evidence of such prior negotiations cannot be used to contradict or alter the written terms. *Id.*

Here, the ABA expressly undertook to consider the merits of the Committee's acquiescence recommendations in ¶ 7 of the Agreed Order. Paragraph 7 refers to page 105 of the hearing transcript, which includes discussion of the Committee's and the Council's ability and willingness to address the acquiescence applications at their June and August 2004 meetings, respectively, *if* Cooley agreed to comply with Standard 105 by ceasing satellite operations until obtaining acquiescence. In this discussion, counsel for the ABA expressly refrained from making any assurance as to "what they would decide." Instead, the discussion recorded subsequent to page 105 includes only (1) the ABA's acknowledgment that evaluation of the merits of the applications would be relevant in determining the nature of sanctions (pp. 107–

111); and (2) the ABA's agreement to take up the matters of sanctions and acquiescence together (pp. 116–127).

■ The transcript of the parties' oral settlement agreement does not, therefore, substantiate the existence of any more specific commitment by the ABA to evaluate and render decisions on the merits of the applications. Indeed, in the Agreed Order, the ABA expressly reserved discretion—discretion limited only by its own Standards, Rules and Interpretations—to impose sanctions and to decide whether to acquiesce in the applications. Agreed Order ¶¶ 9–12. Hence, even if the Agreed Order is read in light of the transcript—for the purpose not of altering but of clarifying the meaning of its terms—it is clear that the ABA did not violate the Agreed Order by deferring action on the applications for acquiescence. Further, it is equally clear that the Council, by adopting the Committee's findings and conclusions, and by expressing its serious concern about bar passage results, did, within the broad parameters of its expressly reserved discretion, consider the merits of the Committee's acquiescence recommendations. There is, thus, no genuine issue of material fact. The ABA did not violate the terms of the Agreed Order. Cooley's motion to compel enforcement of the settlement agreement will therefore be denied.

## IV. CONCLUSION

The Court has carefully considered the parties' arguments, briefs and exhibits and has found Cooley's positions in this litigation legally and factually wanting. In counts II—VI of its first amended complaint, Cooley has asserted claims for relief that are not legally cognizable. The ABA's motion to dismiss these five claims for failure to state valid claims will therefore be granted.

The count I common law due process claim is properly before the Court. Pursu-ant to this claim, the Court has undertaken judicial review of the ABA's decisions to impose sanctions on Cooley and to defer action on its applications for acquiescence. Applying, as it must, limited deferential review to the materially undisputed record of proceedings before the ABA, the Court concludes that Cooley has failed to demonstrate that the ABA acted arbitrarily or capriciously, abused its discretion, or acted without observance of required procedure. The ABA is therefore entitled to judgment as a matter of law, upholding all of its decisions over Cooley's challenges.

A judgment order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED:**

1. That the motion of defendants American Bar Association ("ABA") and John Sebert to dismiss counts II, III, IV, V and VI of plaintiff Thomas M. Cooley Law School's first amended complaint is **GRANTED**; and counts II through VI of the first amended complaint are hereby **DISMISSED** for failure to state a claim upon which relief can be granted.

2. That plaintiff's motion for partial summary judgment, as to count I of the first amended complaint, is **DENIED.**

3. That plaintiff's motion to compel enforcement of the settlement agreement is **DENIED.**

4. That the motion of defendant ABA for summary judgment on count I of plaintiff's first amended complaint is **GRANTED**; and defendant ABA is hereby **AWARDED JUDGMENT** as a matter of law on plaintiff's count I common law due process claim; and the decisions of the ABA to impose sanctions on plaintiff and to decline to act on plaintiff's most recent

applications for acquiescence are **AF-FIRMED**, as not being arbitrary and capricious, an abuse of discretion, or reached without observance of required procedure.